Good morning, Your Honor. I'd like to reserve three minutes for rebuttal. May it please the Court. I am Seth Fine, Deputy Prosecuting Attorney for Snohomish County, and I'm representing the appellants of Snohomish County Superior Court. That's the only named respondent that is still in the case, but the court is a nominal party here, and the real party in interest is the state of Washington. This case calls on the court to clarify the distinction between two different but overlapping doctrines, the implied acquittal doctrine and the manifest necessity and doctrine. Now, implied acquittal is an inference about what did the jury mean by its verdict. If a jury is given a choice of different possible verdicts such as first-degree murder or a second-degree murder, and that was the situation in Green v. United States, and they say guilty of second-degree murder and they don't say anything about the first-degree murder, we draw an inference that they meant not guilty as to first-degree murder. Now, counsel for appellee is quite correct that application of that doctrine does not depend on acquiescence by counsel. Somebody has been acquitted and he's entitled to the benefit of that acquittal and his attorney... Well, Jeopardy Attached, he had a trial. That's correct. And there were two charges and a lesser included of one charge, right? Correct, yes. And so the jury came back on the lesser included, the misdemeanor, and the judge asked, does anyone want me to poll the jury? And so for whatever reason, the jury was never polled on. There was one offense that didn't have a lesser included and they didn't sign that verdict, right? Correct. They didn't sign the greater of the one that had the lesser included and the jury was polled on whether they all agreed that the misdemeanor was their conviction, right? Most. So, and wasn't there some sort of instruction? Now, I'm kind of a, I'm sort of a California girl and in California we have an instruction and I did this. Both as a prosecutor and as a judge, you told them you don't look at the lesser till you look at the greater and if you, you, if you're not convinced beyond a reasonable doubt that the greater was committed, then you can look at the lesser. So it, but the parties could have clarified whether they were deadlocked and did something contrary to that instruction or otherwise and they didn't. And then you got that whole other offense that maybe they just, you know, I mean, it kind of seems that what they did was they all agreed that he was guilty of this misdemeanor and that was it. This is why it's important to clarify between the implied acquittal and manifest necessity doctrines and to correct you factually as to one minor point, the jury did in fact sign and submit a verdict form as to the greater offense but they left the blank, the part where it said guilty or not guilty blank, which was exactly in If you reach a verdict on this charge, then fill in guilty or not guilty. They didn't do that. They didn't reach a verdict on that charge. But counsel, it wasn't subtle, right? There's a, the colloquy that Judge Callahan's referring to at ER 63, I think it goes over to ER, it does. I'll go over to 64. He's polling the jury on count two, right? That's correct, yes. And no polling as to anything about count one. That's correct. Exactly. And then he says, I'll accept the jury's verdict as to count one, quote, the conviction on the lesser offense, close quote. That's child court was quite expressed about what he or she was doing. Oh yeah. Why, why is it that he didn't poll the jury as to the other count? Because he was asked not to. Right here. No, I'm not sure he was not asked. No, he was not. No, he asked, do you want this? So, and they said, no, they went along with what defense attorney asked for, which was the prosecutor isn't a potted plant there. And what, what makes all prosecutors quack, quake in your boots is double jeopardy. And so, and that's why you don't ask for mistrials a lot of times in all of that. So if you think that there's any sort of confusion, and then you make sure either it was a hung jury or what, what's going on here, if you want to, if you want to retry someone. Indeed, they fell into the trap created by defense counsel of deliberately or inadvertently. But the question, where's the trap here? I really want to understand where the trap is. The trap is, do you want the jury polled as to count one answer? No, your honor. I'm prepared to enter a mistrial and direct a new trial as to count two. Then we decided we want to pull on count two. The judge very clearly pulled on count two and then doesn't circle back to count one. Nobody circles back to count one. The judge though says, I will declare a mistrial with respect to count two. I'll accept the jury's verdict as to count one and then says, he's interpreting it or she, the conviction on the lesser offense. So right there, that's a really good time to object. Nobody does. And nobody sets a trap. Where's the trap? The trap is, if any of you would like the jury to have the jury pulled as to that verdict on count one, I can do so. He doesn't say that. He says, I'm prepared to enter mistrial. I'll be happy to inquire if with further deliberations, they may be able to reach a verdict on that count. He's talking about count two. I'm looking at excerpts of record 64. Okay. It says, you know, with that, pardon? I really want to make sure I'm not missing it. What line please? We, uh, starting at line four and basically going through with one to line 10, the court has declared a mistrial with respect to count two. Okay. That's not as issue. I'll accept the jury's count one. But again, the conviction on the lesser offense, correct. But if any of you would like to have the jury pulled as to that verdict, I can do so. To which defense counsel responds. No, there's the procedural trap. No, from the state, your honor. No, you're right. They both said no. Thank you. That's correct. They both said no. I don't see the trap yet. And maybe you can persuade me, but here's how I see it. Assuming for a moment that what the judge is asking, do you want me to pull the jury as to the greater of the two offenses under count one? I'm not sure that's what he asked, but assuming that's what he asked, the state says no. The, no surprise, the defense says no. If the state had said yes, it would have been pulled. Where's the trap? The, the trap is the defense leading the court to believe that he want, does want. Wait, wait, wait, wait. Defense counsel represents the defendant and the defendant's inserts only. The prosecutor represents the people of the state and all of that. The defense counsel is not creating a trap when maybe they don't want it pulled for exactly all the reasons that we're sitting here here. But that's what someone calls good representation of a defendant. And it's not a trap. You're asking the defense counsel to put, to do your job in the noose. I'm asking, what I'm asking the defense counsel is to do his job of assisting the court in making an important and delicate decision, which is should the jury be discharged. In making sure that his client can be charged again and not, and can't allege double jeopardy? In making sure that the court has the assistance that it's entitled to on making, on the decision of should the jury be discharged or should they not be discharged? But why isn't that the prosecutor's responsibility? Because. Why are you blaming it on the defendant? This is because. Defendants don't want to be charged again. They always want to say it's double jeopardy. This goes back once again. If the defense counsel did it, it would be an IEC charge against them. Saying I want to help the prosecutor clarify so they can retry my client. I, I think not, your honor. The question, the ultimate question, and this is why it goes back to the manifest necessity issue. What manifest necessity is all about is premature discharge of the jury. Discharging the jury at a time when the defendant still has a right to full verdict from that jury. And that's why defense counsel should say either they do or don't want the jury discharged. You know, I'm totally on board with the questions and to some degree the implication from Judge Callahan's question. The prosecutor is fully in a position to protect the interest of the state by asking for polling. Prosecutor did not do so. And you're saying the defendant has an obligation to put his client's head in the noose. I don't get it. What, what we're, what I'm saying is that a defendant who doesn't want the jury polled, does not want the court to inquire to deadlock, shouldn't be allowed then to come in and say, oh, the jury was discharged prematurely. There wasn't a proper declaration of deadlock. That's a violation of my client's rights. But the defendant counsel did nothing to prevent the polling. He simply did not ask affirmatively that it be done. I, I would say that he specifically told the court in effect that he didn't want it done. Well, it's fair enough, but, but if the state had wanted it, there was no way he would have asked for it. They, they fell into the trap, but it, but what we're dealing with here is the defendant's right to, to have, to have the jury discharged or to have further inquiries. And what I'm saying is just, if he wants further inquiries, if he thinks the jury shouldn't be discharged, then he should say so. Maybe let's continue on, on your theme of blaming the defendant here and not taking responsibility as a prosecutor. The county didn't rate the And I can't find, so now you're raising it, and I can't find any case, and maybe you can help me, in which the Fugitive Disentitlement Doctrine has been applied by an appellate court when the government, not the defendant, appealed the lower court's decision. The defendant's not asking to be here, not asking to do that. So, do you have a case for me? I'm not aware of any cases that are comparable to this one. It's an unusual situation, but what distinguishes the cases raised from, by the defense is this entire proceeding was initiated by the defendant by seeking habeas corpus. And, you know, all the cases he cites where it's inapplicable were proceedings initiated originally by the state. I see that my time has expired. Let's hear from the other side, and we will give you a chance to respond. I appreciate that. Thank you. Good morning. Good morning, Your Honors. Alan Zarki on behalf of Mr. Farzad. Let me first address, very briefly, Judge Callahan's question regarding a fugitive disentitlement. Not only are there no cases supporting the county's position, we cited in our response to their motion, which the county did not reply to, the Sharp case, which I think is right on point, where the Supreme Court said the cases of the sort that the county's relying on are... They said the doctrine is wholly irrelevant. Correct. Thank you, Your Honor. And so I think that totally answers the question. Because it's not the defendant's appeal. That's correct. Right. Also raised for the first time in the reply brief. Okay. You win on that point. Next. All right. The entirety of the discussion through Mr. Fine and this Court was about their, this county's implied acquiescence doctrine. Let me first note and address counsel's very first comment about a need to clarify. He concedes that the implied acquiescence doctrine has no bearing if there was, in fact, an implied acquittal. And there is no need to clarify the law on this. Brazel set the law on this. Brazel held, Brazel was impliedly acquitted as his second trial of the greater offense under the exact same jury instruction as here. Right. Brazel held an implied acquittal occurs when a returnee returns a guilty verdict as to a lesser, but remains silent as to the other charges without announcing signs of hopeless deadlock. That's exactly the same as here. The county's... The state could have said, hey, we want, this is a blank. We want the jury pulled. We want to know if they were deadlocked. The state certainly could have done that. What I'm first noting is... We've read the case. Okay. And that counsel's are contentions that Brazel is dicta are incorrect for the reasons I detailed in my surreply. A, their statements were required because under 2254, it could not, the court, this court could not have granted habeas without actually finding a constitutional violation. But secondly, even if somehow they were not required, they clearly were reasoned dicta and therefore are binding. Mr. Zarke, opposing counsel also made an argument in his brief that I'm not going to be able to put my finger on, but I'm going to paraphrase it. He said that we should clarify because there are two different statements within that case that he thinks are inconsistent or misleading. Can you respond to, you know which argument I'm referring to? Yeah, I do, Your Honor. And I would say that, A, they're not necessarily inconsistent. There were two different statements about when applied acquittal occurs. One referred to without announcing any signs of hopeless deadlock. I'm not remembering the exact other quote that he, there are two different general statements, but the point is... Right. And so my question is just, should we clarify? I don't think there's any need to, Your Honor, because in fact, both occurred. I can pull up the other quote, Your Honor. It's in their reply brief. I'm sorry. No, I'm probably getting it out of your notes, but it seems to be something worth circling back on. Okay. Your Honor, I don't have, it's on... It's on page eight. Page eight of the, I don't know, page four of their brief. Yes. It's on page four. The opening paragraph. They, one of the quotes is the one I did, without announcing signs of hopeless deadlock, and the other is without announcing any splits or divisions. Well, both occurred here. They didn't announce splits or divisions. They didn't announce a hopeless deadlock. But, Mr. Duckey, it's really hard for me to, I think you're talking pretty fast. I'm sorry, Your Honor. I am. You've got plenty of time. It says, on his brief, opposing counsel's brief, an implied acquittal occurs when a jury convicts on the lesser alternative charge, but remains silent as to the other charges without announcing any signs of hopeless deadlock. That's the first, right? Yes. And then the second one is, he says, this contradicts what the court said earlier, in that opinion, that an implied acquittal occurs when the jury convicts on the lesser charge, quote, without announcing any splits or divisions. Does that, does that create an ambiguity? That's, that's the state's argument. Your Honor, whether or not it does, there's no need to resolve it now, because both are true here in the, under these facts. So, under Brazel, this is, there was an implied acquittal here. I would also note that this court has, at least twice, and several district courts in both Washington and California, have quoted the one about hopeless deadlock as being the law of implied acquittal, citing to Brazel. So. I think where we can get, and I'm not sure that Brazel really needs all that much clarification, the basic rule is, unless we know, from whatever means we know, unless we know the jury is hopefully deadlocked such that a mistrial should be declared, apply, implied acquittal follows. There may be various ways of determining whether the jury is hopelessly deadlocked. It may be by polling the jury, it may be by other mechanisms. But the key is, is there something here that shows us that a mistrial is required? Yes. Let me turn briefly then to the factual question, or the factual predicate, that underlay the discussion during Mr. Fine's presentation. I would submit, Your Honor, that it is quite clear that the trial court, when he said, she, excuse me, have, if any of you would like to have the jury polled as to that verdict, I can do so, the immediate sentence, there was only one verdict on to count one. Well, I think he said, I think the court asked both parties whether they wish to poll the jury on the telephone harassment offense. What meaning should we place on the court's question and the fact that both parties declined? Because he had the, he had the harassment, I'm going to kill you, and then I'm going to do the bomb, or whatever. He had, the words I have here, and I'm sorry, I don't have any, I somehow failed to bring the entire ER with me, but what I'm, the only passage I believe there is, after discussing the count on which they were hung, and they said, I will declare a mistrial as to count two. I will accept the jury's verdict as to count one, which meant the guilty on the lesser, the conviction on the lesser offense. Then she says, but again, if any of you would like to have the jury polled as to that verdict, I can do so. And that meant the verdict of conviction. And as to the failure to convict as to the more serious part of charge one, there's no verdict. The court did not refer to that. I don't understand exactly what you're saying. And the district court, not the magistrate judge, as Mr. Flank intends in his reply brief, the district court in her ruling on the motion for stay took up this issue. She quoted the transcript. She italicized the language I just quoted to you. She noted the county's position, contention that this was an offer to inquire into the silence on the greater. And then rejected it, rejected the county's position and said, however, what the court was, I'm paraphrasing now, what the court was referring to was the verdict. That was a finding and that is subject to clearly erroneous. I don't think we need the clearly erroneous standard here. I think the record's clear what the court was referring to. But I think it's clear there was a finding by the district court. And that this court is required, even though it was based on a transcript, even though it's an inference from a transcript and intellectually, this court is as capable as the district court. I'm not sure much, an inference? I'm not sure there's much of an inference required, Mr. Tarky. I agree, Your Honor. But to the extent there's any question about what the trial court intended. I think we know what the trial court intended. Okay, but I'm just saying that Judge Peckman agreed with us and that is a finding that under Rule 52, you could reverse only if we're clearly erroneous. I appreciate your argument. Well, and belt and suspenders. In my view, even if the trial court judge in the state court had asked, do you want me to pull the jury with respect to what they didn't reach a verdict on? I reached the same answer. I mean, what obligation was there on the defendant to ask that the jury be pulled?  I agree, Your Honor. So belt, suspenders, and one third thing is, in this case, A, that's not what was asked, B, as Your Honor is suggesting, it wouldn't matter. But three, all of this is irrelevant because of Brazile, because there wasn't- Well, the one distinction in Brazile that I could say is Brazile's an AEDPA case, and that one difference between this case and Brazile is that AEDPA does not apply here, but it applied in Brazile. And I don't, you know, you could say that it wouldn't make a difference, but that would be, that is a distinction.  But what my response to that is, is threefold, very briefly. One, that was an AEDPA case, but after the deference, the court ultimately had to find de novo under Panetti a constitutional violation, which means it had to find there was an applied acquittal without any deference. Number two, even though distinguishable, even if they didn't have to reach that conclusion, they did make in reasoned statements, this is an implied acquittal. And therefore, the implied acquiescence argument is gone. And then thirdly, even if Brazile were completely off the books, I think this all follows from Green. But regardless of that, there are three different reasons why the implied acquiescence doctrine doesn't apply here. And as we've discussed, there are two different reasons why, even if it did apply, it doesn't help the county. Thank you, Your Honors. Would you put two minutes on the clock, please? Thank you, Your Honor. First, there was no implied acquittal holding in Brazile. If you look at the case, it clearly says, we, because the state court did not provide any reasons for its determination. Our review was for clear error. The state court did not clearly err. And it goes on to say that under federal law, the Washington Court of Appeals determination of implied acquittal was not unreasonable. Nowhere did the court say, we independently find under federal law that it was an implied acquittal. Counsel says that the court should have. Maybe it should have, but it didn't. But in fact, the court does make a specific determination of federal law when they say, nothing in the record of Brazile's case indicates the jury's inability to agree with hopeless or reconcilable. A manifest necessity permitting a retrial for attempted murder. It's based on the manifest necessity doctrine in which defense acquiescence is a critical part. And secondly, there is a clear inconsistency in the court's formulation of the manifest necessity doctrine. In one place in the opinion, it says it applies if the record doesn't show any splits or divisions. In the other case, it says it doesn't apply if there's hopeless deadlock. The difference, of course, is the word hopeless. And hopeless deadlock is an attribute of the manifest necessity doctrine. So the court in Brazil has commingled the two by putting a concept that belongs to manifest necessity into the implied acquittal doctrine. That is something that needs to be clarified. If, as our position is, the standard is deadlock, a showing that the jury has not agreed, not hopeless deadlock, we should know that in the future, whether or not the court believes that there was, in fact, acquiescence in this case. I'd ask that the holding of the district court be reversed. Thank you. Thank you. Thank both sides for their helpful arguments. Farzad versus Snohomish County Superior Court is now submitted.
judges: W. Fletcher, Callahan, Christen